UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF O'FALLON, MO., ET. AL., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:12CV1124SNLJ** |
| | ) | |
| CENTURYLINK, INC., ET. AL., | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Plaintiffs originally filed this putative class lawsuit in the Circuit Court of St. Louis

County, Missouri.  On or about June 21, 2012 defendants removed the case to federal court

wherein it was assigned to this Court.  This matter is before the Court on the plaintiffs' motion to

remand [16], filed July 17, 2012.  All responsive pleadings have now been filed and the matter is

ripe for disposition.

The plaintiffs, individually and on behalf of the putative class, filed suit in the Circuit

Court of St. Louis County, Missouri seeking to impose business license taxes on defendants in

connection with the defendants' provision of telephone services in certain Missouri

municipalities.  Plaintiffs allege that they are lawful municipal corporations and cities located in

the State of Missouri that have adopted ordinances which impose a license tax upon companies

engaged in the business of supplying telephone services within their respective cities.  They

allege that although the defendants pay license taxes pursuant to these subject ordinances,

plaintiffs contend that the defendants do not pay the required taxes on gross receipts derived from

exchange access, interexchange access, special access, interconnection facilities and equipment

for use, toll or long-distance, reciprocal compensation arrangements, Federal Universal Service

Fund surcharges, State Universal Service Fund surcharges, end user common line charges, intrastate telephone services, and other sources. Petition [4], ¶¶15, 30.  Plaintiffs further allege that the defendants, while engaging in the business of supplying telephone services in the plaintiffs' territories (as well as other Missouri municipalities), and within the meaning of the plaintiffs' and other municipalities' license tax ordinances, and have derived gross receipts from such business during the preceding five (5) years, have failed to pay the required license taxes on gross receipts derived from such business during the preceding five (5) years.  Petition [4], ¶¶25, 30.

Plaintiffs further seek to represent a class of "all Missouri cities or other political subdivisions which have adopted an ordinance in effect that imposes a business or occupational license tax on any person engaged in the business of supplying or furnishing telephone service (including exchange telephone service) in the city or political subdivision, or who is otherwise engaged in a telephone business therein."  Petition [4],¶13.  Plaintiffs allege that the proposed class "should include at least 40 Missouri municipalities." Petition [4], ¶14.  Finally, plaintiffs seek a declaration that their (and other municipalities') license tax ordinances apply to the subject gross receipts and an injunction requiring defendants to pay taxes on these receipts.

On June 21, 2012 defendants filed their Notice of Removal asserting federal original jurisdiction pursuant to the Class Action Fairness Act of 2005 (CAFA).  Defendants contend that the requirements of CAFA have been met in that there is minimal diversity, the amount in controversy exceeds $5 million in the aggregate, and the action involves at least one hundred (100) or more class members.

Plaintiffs contend that the Court should remand this action because the defendants have failed to demonstrate that this action involves at least 100 class members, and/or that the amount

in controversy exceeds $5 million.  Plaintiffs further contend, in the alternative, that the Court should remand because the nexus of the lawsuit is a "local controversy" within the meaning of 28 U.S.C. §1332(d)(4)(A); an exception to CAFA jurisdiction.  Finally, again in the alternative, the plaintiffs argue that the Court should abstain from exercising its original federal jurisdiction pursuant to the legal principles of federalism and comity.

After careful consideration of the parties' pleadings, exhibits, and relevant caselaw, the Court will grant the motion to remand.

### CAFA - Governing Jurisdictional Standards

Under CAFA, federal district courts have original jurisdiction over class actions where there is 1) minimal diversity of citizenship among the parties; 2) there are at least 100 class members; and 3) the amount in controversy exceeds $5 million.  28 U.S.C. §1332(d)(2), (d)(5); Hargis v. Access Capital Funding, LLC., 674 F.3d. 783, 788-89 (8th Cir. 2012); Westerfield v. Indep. Processing, LLC, 621 F.3d. 819, 822 (8th Cir. 2010); Boegeman v. Bank Star, 2012 WL 4793739, *2 (E.D.Mo. October 9, 2012).  A defendant seeking to remove on CAFA grounds must establish by a preponderance of the evidence each of the three (3) jurisdictional elements. Rolwing v. Nestle Holdings, Inc., 666 F.3d. 1069, 1071 (8th Cir. 2012); Bell v. Hershey Co., 557 F.3d. 963, 957 (8th Cir. 2009); Hewitt II v. Gerber Products Co., 2012 WL 5410753, *7 (W.D.Ark. November 6, 2012). If the removing party meets this burden, then the party seeking remand must establish to a legal certainty that the requirements for CAFA jurisdiction have not been met.  Rowling, at 1069 *citing* Bell, at 959.

However, even if the removing party establishes by a preponderance of the evidence the jurisdictional requirements under CAFA, and the party seeking remand fails to successfully demonstrate, pursuant to a legal certainty, that the jurisdictional requirements under CAFA have

3

not been met, removal may still be thwarted.  Congress has established two (2) mandatory exceptions to federal jurisdiction under CAFA: the "home-state" and "local controversy" exceptions. <u>Westerfield</u>, at 821.

Finally, the Court is bound to consider only jurisdictional facts present at the time of removal, and not those occurring subsequently.  <u>Rolwing</u>, at 1073.  Furthermore, the enactment of CAFA did not alter the traditional rule that the plaintiff is the "master of the complaint," and as such, jurisdictional facts must be considered in light of the allegations as contained in the plaintiff's complaint at the time of removal.  <u>Hargis</u>, at 789-90; <u>Bell</u>, at 956.

### CAFA - 100 Class Members Requirement

Plaintiffs, in their complaint, define the class as "all Missouri cities or other political subdivisions which have adopted an ordinance in effect that imposes a business or occupational license tax on any person engaged in the business of supplying or furnishing telephone service (including exchange telephone service) in the city or political subdivision, or who is otherwise engaged in a telephone business therein."  Petition [4], ¶13.  Plaintiffs further contend that the class claims include "whether said license tax ordinances apply to the gross receipts derived by the Defendants from exchange access, interexchange access, special access, interconnection facilities and equipment for use, toll or long-distance, reciprocal compensation arrangements, Federal Universal Service Fund (`FUSF') surcharges, State Universal Service Fund (`SUSF') surcharges, End User Common Line (`EUCL') charges, intrastate telephone services, and other sources."  Petition [4], ¶15.  Furthermore, plaintiffs contend that the class claims include demands upon the defendants to pay the subject license taxes for the preceding five (5) years and the defendants refused to do so.  Petition [4], ¶¶18, 25, 26. Finally, the plaintiffs assert that the proposed class should "include at least 40 Missouri municipalities . . ."  Petition [4], ¶14.

Although this is a vague number and possibly could number 100 or more class members, the burden is upon the defendants, as the removing party, to demonstrate this "possibility" by a preponderance of the evidence.  Defendants have failed to carry this burden.

In addressing the putative class number requirement in their Notice of Removal [1], defendants simply state the following:

> Moreover, in 2011, the CenturyLink-related entities identified in the Complaint remitted some form of municipal franchise fees or business license taxes to approximately 200 Missouri municipalities.

Defendants' Notice of Removal [1], ¶19.  The Declaration of Kiran Seshagiri [3] is the only cited exhibit in support of this statement.

Firstly, nowhere in the plaintiffs' complaint is there any mention of, reference to, or claim involving city or municipal ordinances requiring the defendants to pay a "franchise fee." Plaintiffs' claims are entirely limited to ordinances requiring the payment of "business license taxes" based upon the defendants' alleged gross receipts from certain name sources and not paid for the preceding five (5) years.[1]  Secondly, nowhere in the Seshagiri Declaration is there any mention whatsoever about this case involving at least 200 Missouri municipalities.  Class size is not addressed at all in the Seshagiri Declaration.

In an effort to bolster its class size argument, defendants next contend that they can show "at least sixty more potential class members" by virtue of a "map of the State of Missouri identifying the 'incumbent' local exchange carriers serving each geographic territory." Defendants' Response [18], pg. 3, Exhibit A.

---

[1]The issue regarding whether franchise fees and business taxes can be considered to be one in the same is addressed further by the Court as to the jurisdictional amount element of CAFA.

Once again, this "evidence" falls short of carrying defendants' burden regarding CAFA's numerosity requirement.  Plaintiffs' class specifically embraces 1) all Missouri cities and/or political subdivisions; 2) which have adopted ordinances; 3) that impose a business or occupational tax on entities engaged in the business of providing telephone services within the identified class member's boundaries.  All Exhibit A shows are the municipalities or cities in which the defendants do business.  There is no factual support or demonstrative evidence supporting the defendants' sheer speculation that there are at least 100 class members based upon the complaint's definition of the class.  Defendants have failed to identify via this map, or otherwise, 100 cities which have an ordinance that imposes a business or occupational tax on telephone services as provided by these defendants.  Even if the Court concurs that defendants conduct business in over half of the State of Missouri, it is not up to the Court to assume that at least 100 of these cities meet the class requirements as set forth in the plaintiffs' complaint.  There simply is no adequate proof in the record before the Court as to the potential class size, and therefore defendants have failed to meet its burden of proof as to this CAFA requirement.  *See*, Hewitt II v. Gerber Products Co., at *7.

### CAFA - Amount in Controversy Requirement

"[A] party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of whether the complaint alleges an amount below the jurisdictional minimum."  Bell v. Hershey Co., at 958; *see,* Hartis, at 944 (*quoting* Bell, *supra.*); Hargis, at 789 (*quoting* Bell, *supra.*).  "Under the preponderance of evidence standard, '[t]he jurisdictional fact . . . is not whether the damages *are* greater that the requisite amount, but whether a fact finder *might* legally conclude that they are . . . .'"  Bell, at 959 (*quoting* Kopp v. Kopp, 280 F.3d. 883, 885 (8th Cir. 2002))(alteration in original); *see,* Hartis, at 944 (*citing* Bell,

*supra.*); Hargis, at 789 (*citing* Bell, *supra.*).  This inquiry is "fact intensive."  Bell*,* at 959; *see,* Hartis, at 944 (*citing* Bell, *supra.*).  Punitive damages, as well as allowable attorney fees, are included in calculating the amount in controversy.  *See,* O'Brien v. United Healthcare Services, 2012 WL 1232312, *1 (W.D.Mo. April 12, 2012); Thorton v. DFS Services LLC, 2009 WL 3253836, *2 (E.D.Mo. October 9, 2009).  The removing party's burden is one of "pleading" and not one of "proof,"  Hartis, at 944-45 (internal citations omitted); however, "[M]ere speculation or conjecture on the part of the defendant as to the amount will not be sufficient to meet the preponderance standard."  Hewitt II v. Gerber Products Co., at *8 (internal citations omitted).  Finally, the removing party need not confess liability in order to show that the jurisdictional amount has been met.  Hartis, at 945 (internal citation omitted).

"Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount."  Bell, at 956; *see,* Hartis, at 946 (*quoting* Bell, *supra.*).

In its Notice of Removal [1], defendants aver that "[A]s damages, Plaintiffs seek back taxes, interest, and penalties on behalf of every municipality in the state of Missouri that imposes license taxes or franchise fees over at least a five year period.  In addition, Plaintiffs seek a declaration as to Defendants' tax obligations going forward, and an injunction requiring them to be paid into perpetuity."  Notice of Removal [1], ¶28.  In this same vein of viewing franchise fees and business license taxes as one in the same, defendants further state that the CenturyLink-related entities remitted a total of $303,000.00 in municipal license taxes to the named plaintiffs in 2011; however, these same entities remitted municipal license taxes and franchise fees in the

amount of approximately $3.9 million to "Missouri municipalities."   Notice of Removal [1],

¶29; Seshagiri Declaration [3].

The amount named in the Notice of Removal only totals approximately $4.2 million; i.e.

short of the required $5 million jurisdictional amount.  However, defendants again contend that

some form of "municipal franchise fees or business license taxes" were paid in 2011 to

"approximately 200 Missouri municipalities."   Notice of Removal [1], ¶19.  Again, there is no

factual support for this statement since the referenced Seshagiri Declaration fails to aver any such

number of Missouri municipalities.

Defendants contend that the jurisdictional amount requirement is clearly met because

plaintiffs seek recovery of franchise fees **and** business license taxes.  They argue that there is no

distinction between the two and that because the plaintiffs' complaint fails to make such a

distinction, both franchise fees **and** business license taxes should be considered one in the same.

Defendants further argue that in 2011 alone, defendants CenturyTel Long Distance and

CenturyTel of Missouri generated over $122 million in revenues which could, depending upon

the tax rate, generate a total tax liability (for these two defendants) of $2.4 million to $7.3

million. Since plaintiffs seeks at least five (5) years of "back taxes," the amount in controversy

"far exceeds $5 million."  Defendants' Response [18], pgs. 6-7.

There is a basic flaw to the defendants' argument.  The plaintiffs' complaint clearly seeks

only to recover unpaid business license taxes pursuant to municipal ordinances.  There is

absolutely no mention whatsoever of any recovery of unpaid franchise fees.  "The enactment of

CAFA did not alter the proposition that the plaintiff is the master of the complaint."  Bell, at 956

(citation omitted).  The complaint clearly limits the scope of recovery to unpaid business license

taxes pursuant to municipal ordinances, and for a period of five (5) years preceding.  Defendants'

calculations fail to adhere to the claims as presented in the complaint and; therefore, are premised

on a faulty assumption that plaintiffs seek recovery of both franchise fees and business license

taxes.  *See*, <u>Chochorowski v. Home Depot USA</u>, 585 F.Supp.2d. 1085, 1093 (E.D.Mo.

2008)(defendant's calculation of plaintiff's compensatory damages included damages unrelated

to any claim present in the complaint and; and thus, were "over-inclusive and cannot be

accepted.")

 Defendants aver that franchise fees and business license taxes are one in the same

because it interprets two (2) municipal ordinances as using the terms interchangeably.  They

provide no caselaw to support their legal contention that the terms "franchise fees" and "business

license taxes" are the same whether by statutory construction or pursuant to Missouri law.

 Franchise fees and business taxes are not the same thing.  A business license tax is

imposed for the "privilege of doing business" within a municipality.  The Missouri Supreme

Court describes a business or occupational license tax as follows:

> The general rule with regard to occupational license taxes is well
> stated in 53 C.J.S. Licenses §30, p. 573: ` . . . The subject matter
> of a business or occupation tax, however, is not the sale, even though
> sales of the character specified are utilized as a measure of the tax
> to be assessed, and are essential to a determination that a person is
> engaged in a taxable occupation.  It is not a privilege tax on purchasers,
> or a tax on the property or income.  It is on the privilege or occupation,
> that is, on the person for the privilege of engaging in the business or
> occupation designated . . .' . . .  Gross receipts are merely a means to
> calculate the occupational license tax; what is being taxed is the
> privilege of doing business [in Kansas City].

<u>Kansas City v. Graybar Elec. Co., Inc.</u>, 485 S.W.2d. 38, 41 (Mo. 1972); *see,* <u>City of Bridgeton v.</u>

<u>Northwest Chrysler-Plymouth, Inc.</u>, 37 S.W.3d. 867, 872 (Mo.App. 2001)(Court determines that

Bridgeton's merchant license tax ordinance is a "tax for the privilege of doing business in

Bridgeton" *citing* <u>Kansas City v. Graybar Elec.</u>, *supra.*); <u>City of Poplar Bluff v. Poplar Bluff</u>

9

Loan and Building Assoc., 369 S.W.2d. 764, 767 (Mo.App. 1963)("It is sometimes said that a city license fee is a tax upon the privilege of doing business under the protection of the city ordinances.")

On the other hand, a municipal franchise generally refers to the statutory right of a public utility (including, as in this case, telecommunication providers) to use the public streets and other rights-of-ways for public utility purposes pursuant to the express conditions as imposed by the state, county, or municipality.  See, 18 Mo.Prac., Real Estate Law - - Transact. & Disputes §27.6 (3d. ed.); City of Little Rock, et.al. v. A.T.&T. Communications of the Southwest, Inc., 888 S.W.2d. 290, 292-93 (Ark. 1994); City of Poplar Bluff v. Poplar Bluff Loan and Building Assoc., 369 S.W.2d. 764, 766-67 (Mo.App. 1963). Thus, a municipality, by ordinance, can assess and determine a rate or fee for the services provided by any public utility occupying the municipality's rights-of-way within the municipality.  City of Little Rock, at 621; see also, BellSouth Telecommunications v. City of Orangeburg, et. al., 522 S.E.2d. 804, 808-09 (S.C. 1999).  "The common definition of a franchise is that it is a special privilege conferred by the sovereign upon a citizen or citizens generally.  Generally, a franchise tax is said to be a tax upon the privilege of existing or the privilege of doing certain things."  City of Poplar Bluff, at 766.

Franchises are often viewed as an "easement" or a "right to use the municipality's rights of way;" and the fees imposed for the granting of this "right" are essentially "rental payments for a public utility's use of the municipality's right of way . . ."  City of Little Rock, at 620; see, City of Poplar Bluff, at 766-67 ("The franchise often involves the use of public property; and, in such a case, the city tax upon the franchise holder can become what is really a rental charge.")

Numerous courts have recognized the distinction between business license/occupation taxes and franchise fees.  City of Little Rock, supra. (recognizing that municipalities may be

statutorily authorized to assess public utilities franchise fees for the use or occupancy of the cities' rights-of-way, and as such, are not unlawful taxes); City of Poplar Bluff, *supra*. (determining that the business license fee charged to the defendant was not a franchise fee); *see*, City of Atlanta v. First Federal Savings & Loan Ass'n, 74 S.E.2d. 243, 245 (Ga. 1953)(determinating that franchise fees and business license fees are different and paying a franchise fee is not an exemption from paying a business license fee).

This Court finds that business license fees and franchise fees are not the same, and payment of one is not the same as payment of the other.  A business license fee is a payment to the municipality for conduction a business within the municipality's boundaries; whereas, a franchise fee is a payment to the municipality for the privilege of using the municipality's rights-of-way to conduct business with the municipality's residents.  In fact, the defendants' proffered municipal ordinances recognize this distinction.  For example, West Plains, Mo. has two separate ordinances: one which imposes a license tax, and another which imposes a franchise fee. Defendants' Exhibits C and D [18].  The City of Potosi, Mo. has an ordinance which imposes "upon any telephone company holding a franchise to operate in the City of Potosi, Missouri, an annual license tax, equal to five percent (5%) of the gross annual revenue from local telephone service within the City of Potosi, Missouri."  Defendants' Exhibit B [18].  Defendants contend that simply because the words "annual license tax" and "franchise" are used in the same ordinance, the tax imposed is the same tax.  This argument is meritless.  The word "franchise" is clearly used to differentiate between those telephone companies which hold franchises and those which do not as the proper taxpayor.  The ordinance clearly imposes an "annual license tax" only upon those telephone companies that hold a franchise. The "annual license tax" is not a fee on the franchise right.

Since all of the defendants' calculations lump together business license taxes and franchise fees, it is impossible for this Court to ascertain which portion of the proffered damages amount is strictly limited to the defendants' alleged failure to pay license taxes on gross receipts derived from a variety of sources.  For example, defendants have failed to provide any analysis as to what portion of the alleged $3.9 million paid to "Missouri municipalities" in 2011 reflect business license taxes as opposed to franchise fee payments.  The defendants' failure to separate out from its calculations that portion attributed to business license taxes and that portion attributed to franchise fees leave the Court to speculate as to the whether the jurisdictional amount has been met, and this the Court cannot do.  Thus, defendants have failed to provide evidence to support its calculation of the damages as sought in the plaintiffs' complaint.

Furthermore, defendants contend that they generated over $122 million in 2011 which they attest contributed to the approximately $3.9 million in municipal taxes paid in 2011.  Putting aside the problem that the $3.9 million paid in 2011 does not distinguish between franchise fees and business license taxes, the other jurisdictional problem is that the plaintiffs are litigating in order to recoup business license taxes/fees allegedly **not paid** in 2011 and for five (5) years prior. Defendants' calculations as to taxes paid do not establish the jurisdictional amount for taxes unpaid.  *See*, Freebird, Inc. v. Merit Energy Co., 597 F.Supp.2d. 1245, 1250 (D.Kan. 2009)(class action lawsuit for unpaid royalties remanded to state court because jurisdictional amount in controversy as to unpaid royalties over a period of time could not be established by calculating the total amount of royalties paid over a specific period of time).  Defendants' burden is to establish by a preponderance of evidence the jurisdictional amount **in controversy**.  The controversy in the instant lawsuit is over **unpaid business license taxes**, not **paid business license taxes**.  Again, without evidence of the jurisdictional amount in controversy; i.e. the

12

unpaid business license taxes from 2011 and five (5) years preceding, the defendants have failed to meet their burden.

Finally, the defendants argue that because the plaintiffs seek injunctive relief into perpetuity; i.e. payment of future tax obligations, the jurisdictional amount has been met. Defendants provide no calculations or any evidence as to the amount of these future unpaid taxes, so once again, the Court is asked to merely speculate.  Speculation is not sufficient to meet the defendants' burden under the preponderance of evidence standard.  Hewitt II v. Gerber Products Co., at *8 (citations omitted).

Reviewing the evidence before the Court, the Court finds that the defendants' damages calculations lack the necessary detail, under the preponderance standard, to establish the $5 million jurisdictional requirement in that the calculations are based upon an impermissible co-mingling of business license taxes and franchise fees.  Furthermore, the vague and conclusionary assertions based upon revenues generated and taxed paid in 2011, as well as potential future taxes, fail to meet the preponderance of evidence standard.[2]

## **Local Controversy Exception**

Plaintiffs, in the alternative, contend that even if the defendants have met the jurisdictional requirement for removal under CAFA, this Court should still decline to exercise jurisdiction under the "local controversy exception" to CAFA.  Thus, once the removing party has established the initial jurisdictional requirements under CAFA, the burden shifts to the party

---

[2]Although punitive damages and attorneys' fees may be considered in determining the jurisdictional amount in controversy, the defendants have failed to argue consideration of these factors, nor have provided any evidence in support of any calculations of same.  Given that the defendants have failed to present sufficient evidence to establish the compensatory damages by a preponderance of the evidence, the Court cannot and will not speculate as to whether a combination of compensatory damages, punitive damages (if allowable), and/or attorneys' fees meet the required jurisdictional amount.  *See*, Chochorowski, at 1093-94.

seeking remand to establish that one of CAFA's express jurisdictional exceptions applies. Westerfield v. Independent Processing LLC., 621 F.3d. 819, 822 (8th Cir. 2010).

Under CAFA, two (2) mandatory jurisdictional exceptions exist: "the home-state exception" and the "local controversy exception." Under the local controversy exception, which is relevant to the case at hand, a district court must decline to exercise jurisdiction over a class action lawsuit in which 1) more than two-thirds (2/3) of the class members in the aggregate are citizens of the state in which the action was originally filed; 2) at least one defendant "from whom significant relief is sought by members of the plaintiff class" and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class" is a citizen of the state in which the class action was originally filed; 3) the principal injuries were incurred in the state in which the action was filed; and 4) no other class action alleging similar facts was filed in the three (3) years prior to the commencement of the current class action. 28 U.S.C. §1332(d)(4)(A); Westerfield, at 822; Boegeman v. Bank Star, 2012 WL 4793739. *3 (E.D.Mo. October 9, 2012)(citing Barfield, infra.); Barfield v. Sho-Me Power & Elect. Co-op, 2012 WL 2368517, *2 (W.D.Mo. June 21, 2012). Again, the party seeking to invoke the local controversy exception bears the burden of establishing all four (4) elements by a preponderance of the evidence. Barfield v. Sho-Me Power & Elect. Co-op, at *2 (internal citations omitted); see, Boegeman v. Bank Star, at *3 citing Barfield, supra.

Congress created the local controversy exception to CAFA in order to address those removed cases which consist primarily of intrastate disputes. See, Coffey, et. al. v. Freeport McMoran Copper & Gold, et. al., 581 F.3d 1240, 1243 (10th Cir. 2009); Stevens v. Diversicare Leasing Corp., 2009 WL 1212488, *5 (W.D.Ark. May 4, 2009). Senate Report 109-14 states:

> This provision is intended to respond to concerns that class
> actions with truly local focus should not be moved to federal

14

court under this legislation because state courts have a strong
interest in adjudicating such disputes.  At the same time, this is
a narrow exception that was carefully drafted to ensure that it does
not become a jurisdictional loophole.  Thus, [] in assessing whether
each of these criteria is satisfied by a particular case, a federal court
should bear in mind that the purpose of each of these criteria is to
identify a truly local controversy - a controversy that uniquely
affects a particular locality to the exclusion of all others.

Stevens v. Diversicare Leasing Corp., at *5 *quoting* S.Rep. No. 109-14, at 39 (2005), *reprinted in*

2005 U.S.C.C.A.N. 3, 38.; *see also*, Westerfield, at 825; Coffey, at 1243.  The Senate Report

provides a classic example of the type of class action dispute for which Congress intended the

local controversy exception to cover: A class action suit removed to federal court in which at

least 90% of the plaintiffs reside in Florida, the defendants are a local Florida funeral home and

its out-of-state parent company.  The lawsuit alleges wrongdoing in burial practices and no other

class action lawsuits have been brought against these defendants.  The Senate Report states:

This is precisely the type of case for which the Local Controversy
Exception was developed.  Although there is one out-of-state defendant
(the parent company), the controversy is at its core a local one, and the
Florida state court where it was brought has a strong interest in resolving
the dispute.  Thus, this case would remain in state court.

Id., at 41.; *see also*, Stevens v. Diversicare Leasing Corp., at *5.

The parties do not dispute that Elements #1, #3, and #4 of the local controversy exception

are satisfied.  Only Element #2 is in dispute; i.e. the parties dispute whether defendant Embarq

Missouri (hereinafter referred to simply as Embarq) qualifies as a "significant defendant" under

the local controversy exception.  Plaintiffs contend that defendant Embarq is a "significant

defendant" because plaintiffs allege that all defendants have engaged in the same conduct and do

not pay taxes on the same gross receipts, and thus, the plaintiffs seek the same relief from all

defendants.  The defendants contend that defendant Embarq does not qualify as a "significant

defendant" due to its size.  Defendants contend that because Embarq services a tiny community

(Orrick, Missouri), any damages incurred are minimal compared to the alleged damages sought from the other defendants.  Defendants argue that plaintiffs cannot establish that they seek "significant relief" from Embarq and/or that defendant Embarq's conduct forms a "significant basis" for the claims asserted in the plaintiffs' complaint.

CAFA provides a definition of "significant defendant" as one "from whom significant relief is sought by members of the plaintiff class" and one "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class."  Westerfield, at 823 *quoting* 28 U.S.C. §1332(d)(4)(A)(i)(II)(aa) & (bb).  Although CAFA defines "significant defendant," it does not define "significant relief" and/or "significant basis" nor does it provide any guidance to the courts in defining these terms.

Defendants rely heavily on the Third Circuit case of Kaufman v. Allstate New Jersey Ins. Co., 561 F.3rd. 144 (3rd Cir. 2009) for their argument that the claim asserted against Embarq is not significant by any measure because of the relative size of Orrick, Mo. compared to the sizes of the municipalities serviced by the other two (2) defendants.  They contend that based upon the "Kaufman factors" that courts should consider in comparing the defendants' alleged conduct, defendant Embarq's "percentage" is too small to be considered "significant."  *See*, Kaufman, at 157.  Defendants offer evidence that defendants CenturyTel of Missouri and CenturyTel Long Distance serve much larger cities such as Troy (pop. 10,540) and O'Fallon (pop.79,329), while defendant Embarq serves Orrick (pop. 837).  "Therefore, assuming the Plaintiffs are affected by Defendants' alleged conduct in proportion to their respective populations, the only inference that can be drawn from the Petition is that Embarq's conduct accounts for less than 1% of the basis for the claims asserted or the relief sought."  Defendants' Response [18], pg. 9.  Furthermore, defendants contend that the plaintiffs have failed to apply the Kaufman factors because the

16

complaint fails to differentiate among the defendants as the conduct alleged; thus, failing to compare Embarq's conduct with that of the other defendants' conduct.

Plaintiffs, on the other hand, argue that based upon the allegations in their complaint, defendant Embarq is a "significant defendant."  They assert that their complaint alleges that the defendants all engaged in the same conduct and do not pay taxes on the same gross receipts; thus, plaintiffs seek the same relief from all defendants.  They assert that there is nothing in the complaint which would suggest that defendant Embarq is only a "nominal defendant."  Finally, they argue that defendant Embarq's conduct forms a "significant basis" for the plaintiffs' claims because defendant Embarq is CenturyLink's operating company that, pursuant to tariff, is authorized to provide local telephone service in certain Missouri municipalities, including Orrick.  Furthermore, defendant CenturyTel of Missouri is identically situated in that it also is a CenturyLink's operating company that, pursuant to tariff, provides local telephone service in certain Missouri municipalities, including Troy and O'Fallon.  Defendant CenturyTel Long Distance is CenturyLink's operating company that, pursuant to tariff, is authorized to provide long-distance telephone service to the plaintiffs and other Missouri municipalities.  *See*, Petition [4], ¶¶7,8, and 9.  The defendants are all related as they are the Missouri operating companies of an out-of-state parent corporation, CenturyLink, Inc.  As they are all interrelated, the all have the same status - either they are all "significant" or they are all "nominal."  The defendants' conduct is the same and whether or not one defendant's conduct is "worse" than the other due to the size of the community it serves is irrelevant. Plaintiffs argue that the same allegations, the same type of evidence, and the same relief would be sought whether or not Embarq was a sole defendant or part of a multi-defendant lawsuit.

In Kaufman, *supra.*, the Third Circuit addressed the issue as to whether under the "significant basis provision" of CAFA's local controversy exemption, the provision requires every class member to assert a claim against the local defendant.  Id., at 154-158.  The Court reasoned that "[t]he plain text of this provision relates the alleged conduct of the local defendant, on one hand, to all the claims asserted in the action, on the other."  Id., at 155.  The Court further reasoned "the significant basis provision does not establish an absolute quantitative requirement."  Id., at 156.  It determined that:

> In relating the local defendant's alleged conduct to all the claims asserted in the action, the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants.  Indeed, all the claims asserted by the Plaintiffs reflect the alleged conduct of all the Defendants.  If the local defendant's alleged conduct is a significant part of the alleged conduct of all the Defendants, then the significant basis provision is satisfied.

Id., at 156.  The Court rejected the district court's significant basis analysis which had relied upon a comparison of the number of insurance policies issued in the State of New Jersey by one defendant relative to the other defendants, in addition to rejecting the district court's use of such data to determine whether the local defendant was a "major player" in a particular automobile insurance market.  Id., at 157.[3]  The Court reasoned that the district court's reliance on "nothing more than generic market share numbers does not comport with the language of the statute."  Id., at 157.  In doing so, the district court had failed to focus on the alleged **conduct** of the local defendant in comparison with the **conduct** of all the defendants.  "The local defendant's alleged conduct must be an *important* ground for the asserted claims in view of the alleged conduct of all

---

[3]In Kaufman, *supra.*, several insured brought a state class action suit (which was later removed giving rise to the remand matter under CAFA) against automobile insurance providers based upon the defendants' alleged practice of not paying diminished value insurance claims.

the Defendants."  Id., at 157.  The Court suggested nine (9) possible factors a district court may

consider in comparing the conduct of the local defendant to all the defendants' conduct:

> [T]he District Court could, on remand, inform its comparison of
> the local defendant's alleged conduct to the alleged conduct of all
> the Defendants by considering such possible areas of inquiry as:
> 1) the relative importance of each of the claims to the action; 2) the
> nature of the claims and issues raised against the local defendant; 3)
> the nature of the claims and issues raised against all the Defendants;
> 4) the number of claims that rely on the local defendant's alleged
> conduct; 5) the number of claims asserted; 6) the identity of the
> Defendants; 7) whether the Defendants are related; 8) the number of
> members of the putative classes asserting claims that rely on the
> local defendant's alleged conduct; and 9) the approximate number of
> members in the putative classes.

Id., at 157, n.13.  Finally, the Third Circuit admonished that "[w]hether the District Court

considers any or all of these factors, it must in every case still provide a reasoned analysis that

focuses on the conduct of the Defendants – local and non-local – **as alleged in the complaint.**"

Id., at 157 (emphasis added).  Thus, in Kaufman, supra., the Third Circuit rejected extrinsic

evidence in favor of reviewing and comparing the conduct, as alleged in the complaint, of  the

local defendant with all defendants.  Furthermore, the factors listed by the Third Circuit are

clearly only suggested factors to consider and a district court is free to reject any or all of these

factors in a "significant basis provision" review under the local controversy exception of CAFA.

In Westerfeld v. Independent Processing, LLC., 621 F.3d. 819 (8th Cir. 2010)[4], the Eight

Circuit faced a similar situation as did the Kaufman Court.  The plaintiff asserted two (2) state-

---

[4]In Westerfeld, supra., a Missouri mortgagor filed a state court class action lawsuit
claiming that a Missouri limited liability company providing processing for residential mortgage
documents and its California limited partnership providing residential mortgages.  Plaintiff
alleged that the local defendant and the out-of-state defendant engaged in the unauthorized
practice of law and violated the Missouri Merchandising Practices Act, §407.010 et.seq. by
charging her and others similarly situated a "broker processing fee" and an "administrative fee"
in real estate transactions.

law claims against the non-local defendant and two (2) identical state-law claims against the

local defendant on behalf of two (2) separate plaintiff classes.  After removal, the plaintiff sought

to remand arguing that the federal court was prohibited from exercising jurisdiction due to the

local controversy exception. Defendants contended that the local controversy exception did not

apply because extrinsic evidence, based upon the number of loans processed and the resultant

fees, demonstrated that the local defendant did not qualify as a "significant defendant."

> According to Provident's **[California defendant]** preferred
> analysis, because Independent **[Missouri defendant]** 'participated
> in less than 1.5% of the loans at issue, and generated six tenths of
> one percent of the fees, Westerfeld was not seeking significant
> relief from Independent, Independent's conduct did not form a
> significant basis for Westerfeld's claims, Independent did not
> qualify as a significant defendant, and thus the local-controversy
> exception did not apply to defeat federal jurisdiction.

Westerfeld, at 824 (internal citations omitted).  The district court analyzed the significant

defendant issue separately for each class defined by the plaintiff, and ultimately rejected the

defendants' argument because with respect to Counts I and II of the plaintiff's complaint, each

count defined a class which asserted claims against the local defendant Independent alone; thus,

Independent was a significant defendant and remand was granted.  Id., at 824.

The Eighth Circuit, in applying Kaufman, held that for purposes of the local controversy

exception, whether an in-state defendant is a significant defendant must be determined by

considering the claims of all of the class members of the class action.  Id., at 824-25.  The Court

found that class action plaintiffs could circumvent federal jurisdiction easily if an in-state

defendant's significance is viewed solely on a class-by-class basis.  Instead, the Court adopted

the Kaufman perspective that an in-state defendant's significant should be analyzed by

comparing its alleged conduct with the alleged conduct of all defendants; and that the district

20

court should consider all claims in the action and not consider claims on a class-by-class basis.

Id., at 825.

In Coffey, et. al. v. Freeport McMoran Copper & Gold, et. al., 581 F.3d. 1240 (10th Cir.

2009), the Tenth Circuit upheld the district court's determination that "significant relief" is

sought when the local defendant's conduct is significant when compared to the alleged conduct

of the other defendants, and further, when the relief sought against the local defendant is a

significant portion of the entire relief sought by the class.  Id., at 1244-45.  The Tenth Circuit

agreed with the district court's finding that the statutory language of the local controversy

exception is unambiguous, and that the phrase "[a] defendant from whom significant relief is

sought" does not mean "[a] defendant from whom significant relief may be obtained."  Id., at

1245.  "There is nothing in the language of the statute that indicates Congress intended district

courts to wade into the factual swamp of assessing the financial viability of a defendant as part of

this preliminary consideration . . ."  Id., at 1245.  The Tenth Circuit agreed that significant relief

was sought because all the class members had claims against the local defendant, and all class

members wanted to hold the local defendant jointly and severally liable for their claims.  Id., at

1244.

In Coleman v. Estes Express Lines, 631 F.3d. 1010 (9th Cir. 2011), the Ninth Circuit

addressed the application of the significant basis provision of CAFA's local controversy

exception via various avenues.  Firstly, it determined that the language of the statute was

unambiguous and directs district courts to look only to the complaint in deciding whether the

criteria set forth in §1332(d)(4)(A)(i)(II)(aa) and (bb) are met.[5]

---

[5]In the instant lawsuit, only subsections (aa) and (bb) are disputed; there is no dispute as to subsection (cc).

> The first criterion is whether "significant relief is *sought*" from
> a defendant who is a citizen of the state in which the suit is filed.
> 28 U.S.C. §1332(d)(4)(A)(i)(II)(aa)(emphasis added).  The word
> `sought' focuses attention on the plaintiff's claim for relief --that is,
> on what is `sought' in the complaint – rather than on what may or
> may not be proved by evidence.  The second criterion is whether
> the defendant's "*alleged* conduct forms a significant basis for the
> claims asserted by the proposed plaintiff class." *Id.* §1332(d)(4)(A)
> (i)(II)(bb)(emphasis added).  Like the word 'sought', the word
> 'alleged' makes clear that the second criterion is based on what
> is alleged in the complaint rather than on what may or may not
> be proved by evidence.

Id., at 1015.  Although the Court noted that courts have considered extrinsic evidence to make

factual determinations in resolving questions of federal court subject matter jurisdiction, such

practices are limited to questions concerning citizenship and amount-in-controversy.  Id., at 1016.

It opined that subsections (aa) and (bb) did not require a fact intensive inquiry, and to do so,

would "necessarily implicate(s) the merits of the case."  Id, at 1017.

Secondly, the Court briefly addressed the legislative history of CAFA and found that

certain phrases contained within the applicable Senate Report, such as an example wherein the

relief sought by class (as to allegedly defective transmissions in a specific automobile model)

against the local dealers would be "small change" compared to what the plaintiffs were seeking

from the non-local manufacturer, were taken out of context by a few courts. *See*, Robinson v.

Cheetah Transportation, 2006 WL 468820 (W.D.La. February 27, 2006), *rep't and*

*recommendation adopted*, 2006 WL 1453036 (W.D.La. May 17, 2006)(interpreting the phrase

"small change" to mean that the district court should make a factual determination as to which

defendant will actually pay the bulk of any damage award).  The Coleman Court rejected this

type of interpretation because of the unambiguity of the statutory language, and also because in

the context of the Senate Report example, as to the phrase "small change" a court could easily

discern from the allegations of a complaint that damages due to defective product design would be greater from the manufacturer than from local dealers.  Id., at 1018.[6]

Finally, the Coleman Court determined that the local defendant was a "significant defendant" because the complaint sought damages equally from all defendants, that there was nothing in the complaint to suggest that the local defendant was a nominal defendant, or that the local defendant has so little assets as to make it unrealistic that the plaintiffs were seeking significant relief from it.  Furthermore, the complaint sought injunctive relief from the local defendant, and there was nothing in the complaint to suggest that the injunctive relief sought was insignificant or that the local defendant would be incapable of complying with an injunction.  Id., at 1020.  The Court further determined that the complaint sufficiently alleged conduct of the local defendant that formed a significant basis for the claims asserted against all the defendants.  Although the claims against the local defendant mirrored the claims against the other defendant, the Court found the fact of same claims to no way make the allegations against the local defendant insignificant.  Id., at 1020.

 The Court then addressed the extrinsic evidence offered to show that the non-local defendant had "more assets" to satisfy a judgment against it, and that the non-local defendant "controlled" the conduct of the local defendant.  It found that even if the non-local defendant has "more assets,"  this was not proof of the local defendant's inability to pay a judgment; e.g. the local defendant might have other assets available to satisfy a judgment.  Furthermore, the issue of

---

[6]The Eleventh Court of Appeals cited Robinson, *supra.* with approval in Evans v. Walter Industries, 449 F.3d. 1159, 1167 (11th Cir. 2006) but did so without any real analysis regarding the local defendant's ability to pay.  *See also*, Green v. SuperShuttle Inter'l, 2010 WL 419964, *3 (D.Minn. January 29, 2010)(accepting the Robinson ability to pay test).  This Court finds the reasoning of an unpublished magistrate judge's opinion in Robinson (albeit adopted by the Minnesota district court) unpersuasive in arguing in favor for looking outside the complaint to determine whether the criteria of subsections (aa) and (bb) have been met.

assets was irrelevant as to the injunctive relief sought.  Finally, the Court found that even if the non-local defendant "control(led) all important actions" of the local defendant, this contention still did not address the issue of the local defendant's liability for its own actions.  Id., at 1020.  Thus, based upon the allegations of the complaint, the Coleman Court held that the local controversy exception applied and the case was remanded.

In the instant case, the complaint alleges the same claims against all defendants.  The complaint alleges that the defendants all engaged in the same conduct and all have failed to pay the subject license taxes during the preceding five (5) years.  There is no need or requirement that this Court conduct a "mini-trial" in which evidence is produced as to the specific yearly practices of each of the defendants for the preceding five (5) years.  The conduct of defendant Embarq is the same conduct alleged as to the other defendants.  It's municipal size is irrelevant since the conduct alleged is the same for all defendants.   The complaint's allegations clearly indicate that Embarq's conduct forms a significant basis of all claims asserted.  The complaint seeks damages equally from all defendants.  There is nothing in the complaint to indicate that Embarq is a nominal defendant or that its municipal size undercuts the plaintiffs' sought after monetary relief.  Furthermore, the complaint seeks injunctive relief from all defendants, and again, there is nothing in the complaint to indicate that the injunctive relief sought is in and of itself insignificant or that Embarq would be incapable of complying with an injunction.

The Court finds that the plaintiffs have satisfied the criteria of 28 U.S.C. §1332(d)(4)(A)(i)(II)(aa) and (bb).  It is undisputed that the plaintiffs have satisfied the other criteria for the local controversy exception under CAFA.  The allegations of the complaint present a controversy which at its core is local in nature.  Missouri has a strong interest in

24

protecting its municipalities' tax interests, and the Missouri state court is quite capable of adjudicating this tax dispute.

*Assuming arguendo* that CAFA's jurisdictional requirements had been met, this Court finds that the requirements as set forth for the local controversy exception to federal jurisdiction under CAFA have been met, and this Court remands this cause of action to Missouri state court.

This cause of action shall be remanded to the Circuit Court for St. Louis County, Missouri for the above-stated grounds.

Dated this <u>14th</u> day of March, 2013.

UNITED STATES DISTRICT JUDGE